UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LATOYA F. BOWEN                                                                                          PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:20-CV-296-DPJ-FKB

TREMAINE L. KEYS, ET AL.                                                                        DEFENDANTS

ORDER

Plaintiff Latoya Bowen sued seven defendants over events related to her child-custody dispute with Defendant Tremaine L. Keys, the father of her minor daughter.  The case is before the Court on the motions to dismiss filed by Defendants Keys; Corey D. Gibson; and David Shoemake, Simpson County CPS/DHS, and Simpson County Chancery Court (collectively, the Simpson County defendants).[1]

In addition to these motions, Bowen filed a document entitled "Writ of Replevin" and a document styled "Motion of Default Judgment/Void Judgment/Award to Plaintiff."  That prompted two motions from Defendants asking the Court to strike her submissions or alternatively for clarification.  For the following reasons, the motions to dismiss [13, 14] filed by Keys and Gibson are granted in part and denied in part; the Simpson County Defendants' motion to dismiss [23] is granted; Bowen's request for a writ of replevin [25] is denied; her motion of default judgment [28] is terminated; and the motions to strike [33, 34] are denied as moot.

---

[1] Bowen also named two additional defendants, the Simpson County Sheriff Department and the Simpson County Youth Court.  The Sheriff Department has answered and filed a separate motion for judgment on the pleadings, but that motion is not fully briefed.  The Simpson County Youth Court has yet to appear.

I. Facts and Procedural History

The facts as asserted in the Complaint are a little messy. According to Bowen, the dispute started in July 2017 when Keys told the Simpson County CPS/DHS that she was neglecting and abusing their minor daughter. The claims were resolved after Bowen completed a five-week parenting class, and CPS/DHS apparently concluded "that the claims made against . . . Bowen were not enough to remove the minor from [her] custody." Compl. [1] at 8.

CPS/DHS then received a second call about Bowen in August 2017. That claim included allegations that Bowen's teenaged nephew sexually assaulted her daughter. Following a shelter hearing, the daughter was temporarily removed from Bowen's custody. But before a follow-up hearing could be held in Simpson County Youth Court, Keys "filed a petition for custody . . . with the Simpson County Chancery Court." *Id.* Defendant Gibson represented Keys in that proceeding. One month later, the youth-court hearing occurred, and CPS/DPS personnel allegedly stated "that the results of the rape allegations were unsubstantiated and inconclusive," but "suggested that the shelter in place order remain with . . . Keys since his attorney . . . Gibson had already filed a petition for custody." *Id.* at 9.

In October 2017, the matter returned to chancery court where Defendant Chancery Court Judge David Shoemake held a custody hearing and appointed a guardian ad litem. In December 2017, the guardian ad litem "stated . . . that . . . Bowen could be allowed visitation with the minor," whom she "had not seen . . . since September 12, 2017." *Id.* at 10. In February 2018, an order of temporary custody in Keys's favor was entered in Simpson County Chancery Court.

Bowen's next allegations jump ahead two years. On February 11, 2020, "a contempt of court hearing was held in the Chancery Court of Covington County, Mississippi." *Id.* at 11. Bowen says she "appointed . . . Shoemake as trustee" by mailing him "a private registered bond .

. . made out to . . . Shoemake . . . , authorized by . . . Bowen in the amount of $100,000." *Id.* According to Bowen, Judge Shoemake neither "respond[ed nor] return[ed] the bond[] or the remaining amount after covering court costs and fees associated with the plaintiff's case." *Id.*

Next, on March 13, 2020, Bowen obtained a written statement from her daughter stating that "she wanted to live with her mother." *Id.* The following week, Bowen "took some documents/contract to the Sheriff of Simpson County." *Id.* at 12. The sheriff "called the chancery judge and was instructed to tell the plaintiff that if the minor's father came back to pick up the minor, to call the sheriff." *Id.*

Apparently, "the documents [Bowen] filed in court" led Keys's attorney, Defendant Gibson, to prepare and present to Judge Shoemake "a writ of habeas corpus" that ultimately resulted in Judge Shoemake signing "an order for the Simpson County Sheriff's Department to locate [Bowen] and remove the minor from the care of her mother [and] return[ her] to the defendant, Tremaine L. Keys." *Id.* Bowen describes the removal of her daughter from her custody, which happened on April 13, 2020, as a kidnapping. *Id.* at 13.

Bowen filed this lawsuit against Keys, Gibson, the Simpson County defendants, the Simpson County Sheriff Department, and the Simpson County Youth Court on April 28, 2020. She identifies federal question as the basis for subject-matter jurisdiction, referencing the First, Fourth, and Fourteenth Amendments to the United States Constitution and the following federal statutes: an unspecified section of Title 15 of the United States Code; 18 U.S.C. §§ 241–42; 41 U.S.C. §§ 6503, 7101–09; and 42 U.S.C. §§ 1983, 1985–86. *Id.* at 4–5. In addition to $5,000,000 in "punitive damages[ and] pain and suffering," Bowen "requests that the court(s) return/grant full legal, sole, and physical custody of [the] minor child . . . back to her." *Id.* at 14.

She also "request[s] that the court[] order[s] counseling for herself, the minor child, and . . . Keys so that all 3 may begin to heal so they can move forward." *Id.*

II.     Standards

The moving defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) raises the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). As such, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citation omitted). "'[A] claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 239 (5th Cir. 2018) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)).

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted).

III. Analysis

    A. Subject-Matter Jurisdiction

The Court's analysis begins with subject-matter jurisdiction. Bowen asserts federal-question jurisdiction under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[2] And though her Complaint references various federal statutes and constitutional provisions, Defendants say she failed to allege any violations of those laws. *See* Gibson Mot. [13] ¶ 3; *accord* Keys Mot. [14] ¶ 3.

"The well-pleaded-complaint rule has long governed whether a case 'arises under' federal law for purposes of § 1331." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). "Under this rule, a claim arises under federal law 'when the plaintiff's statement of his own cause of action shows that it is based upon [federal law] or th[e] Constitution.'" *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). In applying the well-pleaded-complaint rule,

> "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." [*Bell v. Hood*, 327 U.S. 678, 682 (1946).] Rather, the district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," *id.*[] at 685, . . . unless the claim "clearly

---

[2] Section 1331 is the sole possible basis for jurisdiction because the parties are not completely diverse for purposes of 28 U.S.C. § 1332. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).

5

>appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.*[] at 682–[]83 . . . . Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as to not involve a federal controversy." *Oneida Indian Nation of N.Y. v. C*[*ty.*] *of Oneida*, 414 U.S. 661, 666 (1974) . . . .

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

Defendants correctly argue that Bowen has cited several federal statutes that are either irrelevant or offer no private right of action. For example, Title 15 of the United States Code regulates commerce and trade. Assuming some section of that title created a private cause of action, there is no factual nexus between the Complaint's allegations and the federal statutes governing commerce and trade.

Bowen also cites two sections of the federal criminal code, 18 U.S.C. §§ 241–42. But "[f]ederal courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action." *Pompura v. Paxton*, No. A-16-CV-1099-RP-ML, 2016 WL 11586260, at *3 (W.D. Tex. Sept. 30, 2016) (collecting cases). Next, Bowen references several sections of the public-contracts title of the federal code. 41 U.S.C. §§ 6503, 7101–09. But the facts she relays make no mention of a federal public contract.

Finally, Bowen cites 42 U.S.C. §§ 1983, 1985, and 1986. Unlike the other statutes she cites, these sections do provide private causes of action. Under § 1983, an individual may sue when "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws." Section 1985 creates a cause of action against those who conspire to interfere with federal rights. And § 1986 provides a cause of action against those who neglect to prevent a civil-rights conspiracy. So, the question is whether Bowen pleaded any facts to support a claim that Defendants violated her federal rights.

Bowen says that her daughter was wrongfully removed from her custody, and she references the First, Fourth, and Fourteenth Amendments to the Constitution. It is well-established that "parents' right to 'care, custody, and control of their children,' is 'perhaps the oldest of the fundamental liberty interests'" protected by the Fourteenth Amendment's due-process clause. *Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because a parent's custody and control of her children is a fundamental liberty interest, the government may violate substantive due process when it takes away that right." *Id.* While Bowen may not ultimately succeed on her § 1983 claim alleging violation of her substantive-due-process rights, her allegations provide a federal question that implicates the Court's subject-matter jurisdiction. Bowen's Complaint gets past the Rule 12(b)(1) challenge.

      B.      Facial Plausibility of Bowen's Claims

All moving Defendants assert that Bowen fails to state a claim under Title 15 of the United States Code; 18 U.S.C. §§ 241 through 42; or 41 U.S.C. §§ 6503 and 7101 through 7109. As noted above, they are correct. Those claims are dismissed, leaving only her claims under 42 U.S.C. §§ 1983, 1985, and 1986. Defendants Keys and Gibson say those claims must be dismissed as well.

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

7

As to § 1985, Bowen fails to specify which subpart she invokes, but the Court concludes that §§ 1985(2) and (3) are the only potentially viable possibilities.[3]  Section 1985(2) "proscribes conspiracies that interfere with the administration of justice in state court." *Daigle v. Gulf State Utils., Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986).  To state a claim for a § 1985(2) conspiracy, a plaintiff must allege "some racial, or . . . class-based, invidiously discriminatory animus behind the conspirator[s'] action." *Bryant*, 597 F.3d at 687 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

To state a claim under § 1985(3), Bowen must allege that

> (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by racial animus.

*Wong v. Stripling*, 881 F.2d 200, 202–03 (5th Cir. 1989).  Finally, "[s]ection 1986 penalizes those with knowledge of and the power to prevent § 1985 conspiracies who fail to do so." *Bryant*, 597 F.3d at 687.

Keys and Gibson do not separately address these claims or say why they are legally deficient, arguing only that Bowen "never included any factual allegations that could plausibly show that there was a violation of any of the statutes listed or the United States Constitution." Gibson Mot. [13] ¶ 6; *accord* Keys Mot. [14] ¶ 6.  Absent more specific arguments addressed to Bowen's claims, the Court will deny this portion of the motions without prejudice.  Should Keys

---

[3] "Section 1985(1) prohibits conspiracies 'to prevent, by force, intimidation, or threat' a federal officer from discharging his duties or to injure him because of his lawful discharge of his duties." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (quoting 42 U.S.C. § 1983(1)).

8

and Gibson wish to reassert their motions as to these claims, they should address each claim separately.

Unlike Keys and Gibson, the Simpson County Defendants are governmental entities entitled to certain immunities from suits filed under Sections 1983, 1985, and 1986. To begin, those defendants assert that the Eleventh Amendment to the United States Constitution bars claims for damages against the two county entities and Judge Shoemake in his official capacity. Bowen did not respond to that argument, which is legally sound.

> The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity. The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an "alter ego" or "arm" of the state.

*Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citations omitted).

The Simpson County Defendants meet these requirements. First, Congress has not abrogated Mississippi's immunity from suit under §§ 1983, 1985, or 1986, and the Simpson County Defendants have not consented to be sued in federal court. *See Bryant v. Mil. Dep't of State of Miss. ex rel. Miss. Air Nat'l Guard*, 381 F. Supp. 2d 586, 591 (S.D. Miss. 2005) ("[T]here has been no Congressional abrogation of state sovereign immunity as to claims under § 1983, 1985 or 198[6].").

Second, the Simpson County Defendants are arms of the state for purposes of the Eleventh Amendment. The Simpson County Chancery Court "functions as part of the state court system, [so] it is an 'arm of the state' and the plaintiff's claims against it are barred by the Eleventh Amendment." *Davis v. City of Vicksburg*, No. 3:13-CV-886-DCB-MTP, 2015 WL 4251008, at *2 (S.D. Miss. July 13, 2015). And "Judge [Shoemake] in his official capacity is also entitled to Eleventh Amendment immunity, since 'a suit against a governmental employee in [his] official capacity is "no different from a suit against the State itself."'" *Id.* (quoting *Ellis v.*

9

*Miss. Dep't of Health*, No. 4:07-CV-81, 2008 WL 2007153, at *6 (N.D. Miss. May 8, 2008); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  Finally, the county DHS/CPS departments are likewise entitled to Eleventh Amendment immunity.  *See C.A. v. Lowndes Cty. Dep't of Fam. & Child. Servs.*, 93 F. Supp. 2d 744, 747–49 (N.D. Miss. 2000).  In sum, the Eleventh Amendment bars federal suit under §§ 1983, 1985, and 1986 against the Simpson County Chancery Court, the county DHS/CPS, and Judge Shoemake in his official capacity.  Those claims are dismissed without prejudice to refiling in state court.

So that leaves claims against Judge Shoemake in his individual capacity and claims for injunctive relief.  Starting with Judge Shoemake, "[a] judge's actions are protected by absolute judicial immunity, which is overcome in only two scenarios:  (a) where the actions are 'not taken in the judge's judicial capacity' or (b) where they are 'taken in the complete absence of all jurisdiction.'"  *Morrison v. Walker*, 704 F. App'x 369, 372–73 (5th Cir. 2017) (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam).  Whether conduct is within the judicial capacity invokes four factors:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)).  Finally, "allegations of bad faith or malice" cannot overcome absolute judicial immunity.  *Mireles*, 502 U.S. at 11.

Judge Shoemake says all factual allegations against him in Bowen's Complaint "are limited to his role as a judge presiding over the custody dispute between Bowen and Keys—a case pending before him," thereby making his actions "judicial in nature" and subject to absolute immunity.  Defs.' Mem. [24] at 12.  Bowen neither refutes those arguments nor plausibly

10

contends that Judge Shoemake acted in complete absence of all jurisdiction. The Court therefore concludes that absolute judicial immunity bars the individual-capacity claims against him. Those claims are dismissed with prejudice.

Finally, the Simpson County Defendants argue that the *Younger* abstention doctrine bars Bowen's claims for injunctive relief. *Younger v. Harris*, 401 U.S. 37 (1971).

> In general, the *Younger* doctrine requires that federal courts decline to exercise jurisdiction over lawsuits when three conditions are met: (1) the federal proceeding would interfere with an "ongoing state judicial proceeding"; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has "an adequate opportunity in the state proceedings to raise constitutional challenges."

*Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Where *Younger* abstention is appropriate, it calls for "the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

The Simpson County Defendants say all three prerequisites for *Younger* abstention are met here: the underlying state-court case remains pending, child-custody proceedings implicate important state interests, and Bowen may raise her constitutional claims in the pending state-court case. Defs.' Mem. [24] at 13–14. Bowen never directly addresses these arguments, which otherwise appear to be correct. *Younger* abstention is appropriate as to the remaining claims for injunctive relief, which will be dismissed without prejudice to refiling in state court.

C.   Bowen's Additional Filings

On June 25, 2020, Bowen filed a document styled "Writ of Replevin" [25]. In it, she describes her minor daughter as "the plaintiff's property" and "demands what belongs to her" "be returned to her." Writ [25] at 6. "Although this court has the authority to issue 'all writs

11

necessary or appropriate' in aid of its jurisdiction 'and agreeable to the usages and principles of law,' 28 U.S.C. § 1651, [Bowen] has not shown that [her] requested writ is necessary or appropriate in aid of the court's jurisdiction in this action." *Atterbury v. Foulk*, No. 07-6256-MHP, 2009 WL 4723547, at *3 (N.D. Cal. Dec. 9, 2009). The request set forth in Bowen's Writ of Replevin is denied.

On July 8, 2020, Bowen filed a document styled "Motion of Default Judgment/Void Judgment/Award to Plaintiff" [28]. Despite the style of the motion, Bowen does not ask the Court to enter Default Judgment as to the sole defendant that has not yet appeared—Simpson County Youth Court—and if she had, that request would be denied for failure to obtain a Clerk's Entry of Default under Federal Rule of Civil Procedure 55. "After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

Instead of actually seeking default judgment, Bowen's pleading re-urges her Complaint's prayer for monetary damages and announces "that on Friday, July 10, 2020[,] at the time chosen by the plaintiff and her [minor daughter], the plaintiff will be bringing her [daughter] home with her as [she] has requested[, where she] will remain in [the plaintiff's] full custody until she is competent to venture out on her own." Mot. [28] at 3. It does not seek any immediate relief from the Court, should not have been docketed as a motion, and will therefore be terminated. Finally, based on those rulings, Defendants' two motions to strike [33, 34] are denied as moot.

IV. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Gibson's [13] and Keys's [14] motions to dismiss are granted in part as to the claims under Title 15 of the United States Code, 18 U.S.C. §§ 241–42,

41 U.S.C. §§ 6503, 7101–09, but are denied without prejudice as to the claims under 42 U.S.C. §§ 1983, 1985, and 1986.  The Simpson County Defendants' Motion to Dismiss [23] is granted.  Bowen's Writ of Replevin [25] is denied, and her Motion for Default Judgment [28] is terminated.  Defendants' motions to strike [33, 34] are denied as moot.

**SO ORDERED AND ADJUDGED** this the 23rd day of July, 2020.

s/ *Daniel P. Jordan III*  
CHIEF UNITED STATES DISTRICT JUDGE
